142 N.J. Super. 516 (1976)
362 A.2d 63
JAMES STEWART POLSHEK & ASSOCIATES, PLAINTIFF,
v.
BERGEN COUNTY IRON WORKS, THE CITY OF ENGLEWOOD AND AMERICAN ARBITRATION ASS'N., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 4, 1976.
*519 Mr. Brett S. Dankoff for plaintiff (Messrs. Chasan, Leyner, Holland & Tarrant, attorneys).
Mr. Murray Laiks for defendant Bergen County Iron Works (Messrs. Heller & Laiks, attorneys).
Mr. Frank J. Cuccio for defendant City of Englewood (Messrs. Jones, Cuccio & Klinger, attorneys).
PETRELLA, J.S.C.
This dispute arises out of the construction of a certain building for the Department of Public Works of the City of Englewood. An order to show cause was entered why an injunctive order should not issue prior to the hearing before the arbitrators, restraining and enjoining defendants from proceeding with or obtaining an award against plaintiff based on the demand for arbitration filed *520 by Bergen County Iron Works (Bergen Iron) against it; declaring and adjudging that plaintiff is under no contractual or legal obligation to arbitrate the crossclaim by Englewood; enjoining Englewood from proceeding with its crossclaim in arbitration, and severing the crossclaim.
Plaintiff James Stewart Polshek & Associates ("architect") entered into a January 26, 1973 agreement with the city to perform certain architectural services in connection with the building to be constructed, including supervisory duties over the various contractors and subcontractors.
Section 12 of the contract contains a requirement for binding arbitration in the event of controversy between the parties:
All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law.
Defendant Bergen Iron was not a party to the contract between architect and Englewood. However, its separate agreement with Englewood also contains a substantially identical arbitration clause.
The document also incorporates by reference Articles 1 through 14 of A.I.A.[1]. Document A.201 which provides, among other things:
Nothing contained in the contract documents shall create any contractual relationship between the architect and the contractor.
On April 5, 1976 Bergen Iron filed a demand for arbitration against both Englewood and architect. By letter of April 22, 1976 architect, through its New York attorney, participated in the selection of arbitrators and hearing dates, *521 reserving the right to contest jurisdiction. To date architect has refused to answer the demand for arbitration, denying that the American Arbitration Association had jurisdiction since it never contracted with Bergen Iron. However, since under the American Arbitration Association rules, arbitration proceeds despite a party's failure to answer the demand, architect thereupon commenced this action asserting that arbitration could not be effected since, although both architect and Bergen Iron had arbitration clauses in their contracts with Englewood, architect has no legal or contractual obligation to arbitrate with Bergen Iron, a party to which it was not in privity of contract. See Battle v. General Cellulose Co., 23 N.J. 538 (1957); and District 65, R.W.D.S.U. v. Paramount Surgical Supply Co., 117 N.J. Super. 125, 127-128 (App. Div. 1971).
Architect argues that it is not a signatory to the agreement between Englewood and Bergen Iron and in absence of such privity of contract, or its consent to arbitration, it cannot be made an unwilling participant in a proceeding, since arbitration is by nature "voluntarily" initiated by disputants. Architect primarily relies on the line of cases which reveal that arbitration is in essence the voluntary relinquishment of a right to have resort to the courts, a right which remains inviolate unless freely contracted away. See, e.g., Carpenter v. Bloomer, 54 N.J. Super. 157 (App. Div. 1959). Architect is correct in its assertion as far as the direct claim by Bergen Iron.
Generally, submission to arbitration is a matter governed by contract and the parties may fashion whatever provisions they wish to limit the scope of the proceeding. Newark Milk & Cream Co., v. Local 680 of Intern. Broth. of Teamsters, etc., 12 N.J. Super. 36 (App. Div. 1951); and cf. 6 C.J.S. Arbitration, § 76, at 291-293. Our arbitration statute has been stated to be compatible with the common law. Carpenter v. Bloomer, supra, 54 N.J. Super. at page 163. Settlement by this procedure is favored by the courts *522 of this State. Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., 131 N.J. Super. 159, 166 (App. Div. 1974); Keppler v. Terhune, 88 N.J. Super. 455, 461, 462 (App. Div. 1965); and Machine Printers Beneficial Ass'n of U.S. v. Merrill Textile Print Works, 12 N.J. Super. 26 (App. Div. 1951). This view has also been expressed by the U.S. Supreme Court in Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).
The contracting parties are only bound to the extent of their contract and have the right to stand upon the terms thereof. Public Utility Workers, etc. v. Public Service Electric & Gas Co., 35 N.J. Super. 414, 419 (App. Div. 1955). It also is axiomatic that arbitration agreements are to be construed according to usual methods of contract interpretation whereby "a mutual, reasonable and meaningful design is sought from the language used by the parties and maximum effect is given to their intention." Keppler v. Terhune, supra, 88 N.J. Super. at 462. The scope of the agreement, of course, is a matter for judicial scrutiny. See Newark Milk & Cream Co., supra (12 N.J. Super. at 41) and the cases cited therein.
In the matter under consideration Bergen Iron did not enter into a contractual agreement with plaintiff architect, and in fact Bergen Iron's contract with Englewood, by reference, denies any relationship with the architect. Architect may not then seek a direct award against Bergen Iron. Consequently, plaintiff is under no obligation to directly arbitrate the claim made by defendant Bergen Iron.[2] However, plaintiff by the broad language in its agreement with Englewood, is bound to submit that dispute which arises out of and relates to their contract to arbitration.
*523 Bergen Iron counters that even if architect is correct in its assessment of the controlling legal principles, plaintiff has waived its right to dispute the demand because it participated in choosing the arbiters pursuant to the demand. Although the term "waiver" is given varying definitions in varying contexts, it is generally taken to be the intentional relinquishment of a known right. See West Jersey Title & Guaranty Co., v. Industrial Trust Co., 27 N.J. 144, 152 (1958); Merchants Indemn. Corp. v. Eggleston, 37 N.J. 114, 130 (1962); 3A Corbin, Contracts § 752 (1960); 5 Williston, Contracts (3d ed. 1961) §§ 678, 679.
A claim of waiver cannot be successfully raised against the architect here for participating in the choosing of the arbiters relating to Bergen Iron's claim when there is no contractual or other basis for arbitration of that dispute. Furthermore, architect's participation was expressly subject to its objection to arbitration and was proper as a contingent measure in the event it was unsuccessful in this suit, since arbitration would have proceeded even if it refused to answer. By refusing to answer, architect risked at its peril being denied the opportunity to participate in the selection of arbiters in accordance with applicable rules.
The question now is, recognizing that the architect-Englewood and the Englewood-Bergen Iron disputes must be arbitrated, and the resolving of either controversy will certainly affect the other, does the cross-claim fail because Bergen Iron has no arbitration right against plaintiff and is enjoined from proceeding against plaintiff, or should this court refuse to in effect sever the "cross-claim" of Englewood? For practical purposes, this latter course would save time, expense and avoid any conflict or inconsistency in award.
It would be more form over substance to hold that the cross-claim would fall automatically and that Englewood must file a separate paper in arbitration labelled demand for arbitration against architect. In the circumstances the *524 cross-claim was in effect a demand for arbitration. Even if it could not be so viewed the court would grant a stay for a reasonable period to allow the filing of such a demand and an application for consolidation. Indeed, the counterclaim of defendant can be construed to request such relief. Our liberal practice does not require such a formalistic approach, however.
Architect objects to the matters proceeding together, relying on Wm. C. Blanchard Co. v. Beach Concrete Co., 121 N.J. Super. 418 (Ch. Div. 1972) which held there could be no consolidation of arbitration actions because neither court rule nor statute authorized it. In Blanchard, the court was concerned with "a web of claims and cross-claims" flowing from the construction of an office building. As in the case at bar, there were a number of contracts and subcontracts. Each contract contained an arbitration provision, but the clause did not refer to inclusion in arbitration of third-party claims or to consolidation of arbitrations.
The court in Blanchard reviewed our arbitration statute, N.J.S.A. 2A:24-1 et seq., and concluded at page 429 that:
... the use of "may" in sections 3 and 5 does not show legislative intent to confer discretionary power to enforce or not to enforce an agreement for arbitration when the parties to the agreement have a dispute covered by it. Such discretion appears to be in conflict with the unqualified declaration in section 1 that an agreement to arbitrate "shall be valid, enforceable and irrevocable...."
Judge Herbert found that he was not vested with the power under the statute, in absence of permissive language in the contract, to compel arbitration of the many claims in one proceeding. Despite his ultimate decision, he expressed his personal view by a reference (121 N.J. Super. at 428) to language in an English decision[3]:
It cannot be right to cut up this litigation into two actions, one to be tried before the arbitrator and the other to be tried elsewhere.
*525 Bergen Iron points out that Blanchard was cited with approval by the Appellate Division in Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., supra which said at 131 N.J. Super., page 168:
We are, of course, cognizant of the salutary objectives of our consolidation procedures, but a contractual right to arbitration cannot be abridged in favor of consolidation.
However, plaintiff's reliance on Hudik-Ross does not seem well taken. The Hudik-Ross statement appears to be dictum. It was directed at the consolidation of the many law suits involved in that matter and not to a consolidation in arbitration which was not in issue. Reference to refusal to allow consolidated law suits to proceed gave preference there to the parties' contractual right to arbitration. Thus, in the context of that opinion the quoted statement does not appear dispositive in considering the viability of Blanchard as present law. Other jurisdictions have considered the issue and recent authority and trends warrant reexamination of this issue in New Jersey in the absence of controlling appellate authority. Blanchard is not binding authority on this court. See Mears v. Economy Brake Serv. Inc., 78 N.J. Super. 218, 228 (App. Div. 1963), and State v. Hudes, 128 N.J. Super. 589, 596 (Cty. Ct. 1973).
Persuasive authorities in recent years concluded that in the absence of statute or rule prohibiting it, consolidated arbitration could be held over objection, provided the issues were substantially the same and as long as a substantial right of one of the parties is not prejudiced. Obviously, if the parties expressly consented, then such consolidated arbitration could proceed. Vigo Steamship Corp. v. Marship Corp., 26 N.Y.2d 157, 309 N.Y.S.2d 165, 257 N.E.2d 624, cert. den., 400 U.S. 819, 91 S.Ct. 26, 27 L.Ed.2d 46 (1970) was an action involving an agreement between plaintiff and defendant (containing an arbitration clause) for time charter of a ship. Plaintiff Vigo then entered into a voyage *526 charter agreement (providing for arbitration) with a transporter of materials. When a dispute arose between the three firms over damage to the ship, plaintiff demanded arbitration with the defendant Marship which in turn demanded arbitration under the contract relating to transport. Marship also moved for consolidation arguing common questions of law and fact. The court rejected plaintiff's arguments that consolidation was improper because it was not in privity of contract with the third party, and also refuted the assertion that the repeal of section 96 of the Civil Practice Act, which had denominated arbitration a special proceeding, controlled by rules specifically recognizing consolidation, deprived the court of jurisdiction to order the consolidation. See Met Food Corp. v. M. Eisenberg & Bros., Inc. 59 Misc.2d 498, 299 N.Y.S.2d 696 (Sup. Ct. 1969).
Relying on the more general terms of Section 7502 of the N.Y. Civil Practice Law and Rules the court stated:
Indeed, as we noted in the cited case as to an analogous issue, whether or not there is consolidation of the arbitrations, the issues of the extent of and liability for the damages to the ship will nevertheless be before the arbitrators and consolidation will make it possible to determine those issues in one proceeding involving all of the interested parties and to avoid the possibility of conflicting awards as well as the additional time and expense of separate proceedings. [309 N.Y.S.2d at 168]
The criteria for judicial consideration of whether to order consolidation was reemphasized in a subsequent New York decision, Materials Intern, etc. v. Manning Fabrics, 46 A.D.2d 627, 359 N.Y.S.2d, 812, 814 (1974), which stated:
The test is whether the issues are substantially the same and whether any substantial right is prejudiced.
A similar result was reached in C.B.S. v. American Recording and Broadcasting Assoc., 414 F.2d 1326, 1329 (2d Cir.1969) and Grover-Dimond Assoc. v. American Arbitration Ass'n, 297 Minn. 324, 211 N.W.2d 787 (1973) wherein *527 the Minnesota Supreme Court specifically rejected the Blanchard reasoning in favor of the New York rule as expressed in Vigo. See also Children's Hospital of Philadelphia v. American Arbitration Assoc., 231 Pa. Super. 230, 331 A.2d 848 (1974).
A federal District Court in Rhode Island also considered a similar issue. Robinson v. Warner, 370 F. Supp. 828 (D.R.I. 1974) was an action under 9 U.S.C. § 4, the federal counterpart of New Jersey's arbitration statute, N.J.S.A. 2A:24-1 et seq. The underlying dispute there concerned construction of a private home and disputes between the architect, contractor and owner. The owner had an arbitration provision in his contracts with both architect and contractor and demanded arbitration against both, requesting consolidation. The architect objected, arguing lack of privity between himself and the contractor. The issue expressed by the court was:
[C]an [the court] compel a consolidated arbitration when the agreements to arbitrate are embodied in separate contracts, (although there is one common party to both agreements), and neither of the separate contracts provide for consolidated arbitration[?] [370 F. Supp at 829]
The court noted the lack of specific authority in 9 U.S.C. § 4 for consolidation, but was unimpressed and opted to embrace the rationale of New York court in Vigo.
A consolidated proceeding, under such circumstances would appear to be a more efficient method of solving these disputes and apportioning any liability that may be found. Furthermore, it would avoid the possibility of conflicting awards which could conceivably leave the plaintiff without any remedy. [Id.]
For cases contra, most pre-1970, see, e.g. Stop & Shop Cos. v. Gilbane Building Co., 364 Mass. 325, 304 N.E.2d 429 (1973); Hjelle v. Sornsin Construction Co., 173 N.W.2d 431 (N.D. 1969) (based on holding that statutory procedure for selection of arbitrators implied only two parties), *528 and J. Brodie & Son, Inc. v. George A. Fuller Co., 16 Mich. App. 137, 167 N.W.2d 886 (Ct. App. 1969) (not allowed by clear language of contract). Cases on both sides of the issue are discussed in Annotation, "State Court's Power to Consolidate Arbitration Proceedings," 64 A.L.R.3d 528 (1975).
Nor should this court be dissuaded by absence of an explicit statutory directive permitting consolidation of arbitration proceedings. Indeed, there is no basis for finding our statutes or rules prohibit it where there is a common thread, and arbitration was agreed to with another party involved, and subject to the usual discretionary criteria for consolidation.
Indeed, as then Judge (later Justice) Hall stated in Carpenter v. Bloomer, 54 N.J. Super. 157, 167 (App. Div. 1959), in speaking of common law arbitration:
It is of no moment that there are no procedural provisions therefor in our rules. R.R. 4:121 states "If no procedure is specifically prescribed, the court shall proceed in any lawful manner not inconsistent with the Constitution, these rules or any applicable statutes." [citations omitted]
Present court Rule 1:1-2 carries forward the concept of its predecessor (Rule R.R. 4:121) in stating in the last sentence thereof, "In absence of rule, the court may proceed in any manner compatible with these purposes." Laudable purposes addressed by our court rules include securing a just determination, simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. Here, there has been no claim that allowing the two claims in arbitration to proceed together would prevent accomplishment of any of those goals. Indeed, it appears those goals would be furthered and the result would be to accomplish what Judge Herbert in Blanchard recognized should be the result.
An agreement to arbitrate confers jurisdiction upon the court to enforce it, and it follows that such jurisdiction imports *529 power to regulate the method of enforcement. Consequently this court respectfully disagrees with the view in Blanchard that consolidation is inconsistent with section one of our statute, providing that agreements to arbitrate "shall be valid, enforceable and irrevocable." Consolidation is merely a procedure controlling the manner of arbitration and does not affect the parties' contractual right to arbitration which remains "valid, enforceable and irrevocable."
As stated in Domke, The Law and Practice of Commercial Arbitration, § 27.02 at 272-273 (1968):
The general rule is a court may order consolidation of arbitration proceedings where the parties are not the same if the issues are substantially the same and if no substantial right is prejudiced. Thus, where two contracts containing broad arbitration clauses have different provisions as to the amount of goods and the price, but where the same witnesses would be called and the same testimony heard by the same persons in each proceeding, the two (or more) may be consolidated.
In this case there is an uncontroverted common thread of issues and facts arising out of a single project. Absent specific language prohibiting joint or consolidated arbitration, and where there is no showing of prejudice, consolidation is a practical, economical, convenient and preferred method of proceeding in the matters before the court. This is not doing indirectly what cannot be done directly since plaintiff has a contract with an agreement for arbitration with Englewood, and Englewood has a similar contract provision with Bergen Iron. Thus, Englewood can only seek an arbitration award against plaintiff. However, the matters can be heard contemporaneously, with witnesses and testimony that are common to other claims and witnesses who would obviously have to appear and testify in each. Nor is there any problem presented here concerning selection of arbitrators or inconsistent contractual provisions.
An order may be entered in accordance with this opinion enjoining Bergen Iron from proceeding in arbitration directly against architect, and declining to enjoin arbitration *530 of the claim by Englewood against architect and the claim by Bergen Iron against Englewood in the same arbitration proceeding, subject to the applicable rules of the American Arbitration Association. The Order to show cause will thereafter be dismissed pursuant to Rule 4:67-5. No costs.
NOTES
[1] American Institute of Architects.
[2] No reported decisions were brought to the court's attention extending the obviously broad language "all claims, dispute and other matters in question arising out of, or relating to, this contract ...." to individuals other than the parties to the contracts, or recognizing a third party beneficiary theory as to nonparties. Compare Newark Milk & Cream Co. v. Local 680, etc., supra (12 N.J. Super. at 40).
[3] Turnock v. Sartoris, L.R. (1889), 43 Ch. D. 150 (C.A.)