761 A.2d 90 (2000)
335 N.J. Super. 73
SPARWICK CONTRACTING, INC., Plaintiff-Respondent,
v.
TOMASCO CORPORATION, Defendant-Respondent, and
Carl Walker Construction Group, Inc., Defendant-Appellant, and
LeFrak Organization, Inc., Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted October 17, 2000.
Decided November 8, 2000.
*91 Harvey, Pennington, Cabot, Griffith & Renneisen, Cherry Hill, attorneys, for appellant (Gary C. Chiumento, on the brief).
Gerald P. Scala, West Orange, attorney, for respondent Tomasco Corporation.
Tesser & Cohen, Hackensack, attorneys, for respondent Sparwick Contracting, Inc. (Lee M. Tesser, on the brief).
No brief was filed by any other party.
Before Judges PRESSLER, KESTIN and CIANCIA.
The opinion of the court was delivered by KESTIN, J.A.D.
Defendant Carl Walker Construction Group, Inc. (Walker), a Michigan corporation with headquarters in Pittsburgh, Pennsylvania, appeals on leave granted from the provision of the trial court's interlocutory order of May 15, 2000, which directed a consolidated arbitration to proceed in the State of New Jersey; and from the trial court's declination to award sanctions in the form of counsel fees pursuant to R. 1:4-8. As to both issues, we affirm.
Walker had been retained as the general contractor on a construction project in Jersey City known as the "Newport South Parking Garage Vertical Expansion" (the project). Walker, in turn, contracted with defendant Tomasco Corporation (Tomasco), a New Jersey corporation, to perform as a subcontractor on the project. Exhibit A of the contract described Tomasco's obligations under the subcontract as involving specified work under the headings of
Select Demolition
Masonry
Caulking/Sealant (Labor only)
Carpentry
Two-Way, Post-Tensioned Deck.
Article 12.1 of the contract between Walker and Tomasco contained an "agreement to arbitrate" all disputes between them arising from the contract
in accordance with the Construction Industry Arbitration Rules ... of the American Arbitration Association ("AAA") and under the auspices of the AAA. The arbitration shall take place in Pittsburgh, Pennsylvania, and .... the arbitrators ... shall apply Pennsylvania law without reference to any choice of law rules. * * * This agreement to arbitrate is specifically enforceable.
*92 This suit commenced on November 6, 1999, when Sparwick Contracting, Inc. (Sparwick), a New Jersey corporation, filed a complaint against Tomasco, Walker, and LeFrak Organization, Inc. (LeFrak), the presumed owner of the property. The complaint alleged that Sparwick had performed work on the project by way of furnishing services and providing materials, pursuant to a contract with Tomasco "for the installation of reinforcing steel and post tension operation" for an agreed-upon price of $46,700 and extras amounting to $29,148; and that Tomasco had paid no portion of the $75,848 due. Tomasco has represented that Sparwick "is not a party to any written agreement regarding the project[.]" It has been undisputed throughout that whatever the nature of the agreement between Sparwick and Tomasco, it did not contain an arbitration provision.
As to Tomasco, Sparwick's complaint alleged, in addition to breach of contract, causes of action on account stated, book account, quantum meruit /unjust enrichment, "additional damages" of $15,000, and consumer fraud including a claim for treble damages and statutory attorneys fees. As to Walker, the complaint alleged all the causes of action pleaded against Tomasco except for breach of contract. As against LeFrak, the complaint alleged causes of action based on quantum meruit /unjust enrichment and for the "additional damages."
Tomasco filed a crossclaim with its answer on January 14, 2000.[1] As against Walker and LeFrak jointly, Tomasco claimed a balance due on its contract with Walker of $383,905.53 by reason of Walker's failure to make required payments. Tomasco also sought "contribution and/or indemnification" against both co-defendants in respect of Sparwick's claim. In a crossclaim against Walker alone, Tomasco sought additional damages and "contribution and reimbursement" regarding Sparwick's claim. In its crossclaim against LeFrak alone, Tomasco sought damages on the theory that "[a]t all times herein relevant Walker acted as the agent of LeFrak."
On February 4, 2000, Walker filed its answer to the crossclaim with affirmative defenses, including one pleading the contractual arbitration clause as a bar to litigating Tomasco's claim against Walker in a civil action crossclaim. Both before and after the crossclaim was filed, Walker's attorney had communicated with Tomasco's requesting that the crossclaim be voluntarily dismissed based on the contractual arbitration clause. Because that request was unavailing, Walker, on March 16, 2000, filed a motion to dismiss the crossclaim on the same basis.
The motion came before Judge Conway on April 28, 2000, with counsel for Walker and Tomasco appearing. Counsel for Tomasco advised the court that he had filed an action in Hudson County to enforce Tomasco's construction lien and had a motion pending in that matter, returnable May 12, 2000, to consolidate this case therein. In the face of Walker's insistence that the arbitration clause of the contract controlled its dispute with Tomasco, and the realization that in the absence of an agreement to arbitrate Sparwick could not be compelled to do so, Judge Conway reflected on the difficulties engendered for the parties and the court in litigating the related issues in two forums. He asked counsel for Tomasco to determine whether both his client and Sparwick would be willing to submit the Sparwick/Tomasco claim to arbitration; and he requested of Walker's counsel that she determine whether Walker would be willing to arbitrate the Tomasco/Walker claim in New Jersey notwithstanding the arbitration clause's designation of Pittsburgh as the venue.
*93 Judge Conway entered his order on May 15, 2000. The order contained a recital that Sparwick had "agreed to arbitration provided the arbitration occurs in the State of New Jersey;"[2] and that Walker had "demanded arbitration" in accordance with its contract. The judge determined "that the most convenient location for arbitration shall be the State of New Jersey, and not Pittsburgh, Pennsylvania[.]" He ordered, inter alia, that "the entire litigation [was] to proceed to arbitration in the State of New Jersey;" that LeFrak "may join the arbitration or may seek dismissal of the present action or seek dismissal through arbitration[,]" failing any of which "this matter will be dismissed without prejudice as to LeFrak;"[3] that Tomasco's Hudson County suit against Walker was "stayed until completion of arbitration;" and that Hudson County would be "deemed the proper venue for enforcement of any arbitration awards by any party[.]" The judge noted further in the order that the pending motion to consolidate this matter into the Hudson County suit had been withdrawn as moot in contemplation of the entry of this order.
Walker filed its motion for leave to appeal on June 5, 2000. In a letter to the Clerk dated June 7, 2000, Judge Conway amplified the reasons for his disposition. See R. 2:5-6(c). He opined:
In Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc., 196 N.J.Super. 16, 31, 481 A.2d 553 (App.Div.1984), aff'd 98 N.J. 266, 486 A.2d 334 (1985), the Appellate Division noted "a recent judicial attitude in favor of ordering consolidation of arbitration under the court's general equity powers where manifestly appropriate. There are `serious problems caused by using arbitration to resolve some aspects of a single, complex controversy and using litigation to resolve others.'" (Citing Rush v. Kuhn, Smith and Harris, 193 N.J.Super. 389, 474 A.2d 1072 (App.Div.1984)).
In this case, only Carl Walker and Tomasco are signatories to the contract providing for arbitration in Pittsburgh. As such, the other parties cannot be compelled to arbitrate this matter. However, the other parties have consented to proceed to arbitration in New Jersey. Therefore, considering the aforementioned Appellate Division statement and the foregoing facts, it is fair and reasonable that this matter proceed to arbitration in New Jersey, which would resolve all issues and claims among the various parties.
This is in accord with Judge Petrella's view in Polshek v. Bergen Cty. Iron Works, 142 N.J.Super. 516, 529, 362 A.2d 63 (Ch.Div.1976), that where there is (1) an uncontroverted common thread of issues and facts arising out of a single project; (2) no specific contract language prohibiting joint or consolidated arbitration; and, (3) no showing of prejudice, then consolidation is a practical, economical, convenient and preferred method of proceeding in matters before the court.
In this case these factors have been met. Additionally, the arbitration clause provides for joining LeFrak by consent of Carl Walker and Tomasco.[4] However, because LeFrak is not a signatory to the contract between Carl Walker and Tomasco, they cannot be compelled to arbitrate in Pittsburgh. This is also true of the other parties to the litigation. Therefore, as a matter of resolving these disputes in their entirety, and in one forum, the matter was directed to arbitration in New Jersey.

*94 Additionally, as the entire litigation cannot be compelled to arbitration in Pittsburgh, general forum non conveniens principles should apply in an effort to resolve this case and the companion Hudson County matter in one forum. The seminal decision in New Jersey regarding forum non conveniens is the Appellate Division's opinion in D'Agostino v. Johnson & Johnson, 225 N.J.Super. 250, 542 A.2d 44 (App.Div.1988), aff'd, 115 N.J. 491, 494, 559 A.2d 420 (1989). There the court identified private interest and public interest factors which it held must be considered individually in any case in which forum non conveniens is in issue. Citing the United States Supreme Court's decision in Gulf Oil Corp. v. Gilbert,[ ] 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) [footnote omitted], the Appellate Division held:
Although phrased in a variety of ways, the essence of the doctrine is that a court may decline jurisdiction whenever the ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate. The principle is often invoked to protect the private interests of the litigants, such as availability of witnesses and the ease of access to other sources of proof.
In this case, most, if not all, potential witnesses are in New Jersey. The evidence is primarily located in New Jersey and the construction site which formed the basis of this transaction is located in New Jersey. The private interests of the litigants are clearly protected by compelling arbitration of the entire litigation in New Jersey.
Lastly, regarding the denial of the application for sanctions under Rule 1:4-8, defendant Tomasco filed a cross-claim that was reasonable and in good faith. Tomasco's cross-claim is based on its right to file a lien pursuant to the Construction Lien Law (N.J.S.A. 2A:44A-1) and Article 7.5 of its agreement with Carl Walker.
We affirm as to both issues for many of the reasons Judge Conway articulated.[5] We add a few words of clarification, especially regarding the trial court's authority, in general, to enter an order designating the venue of contractual arbitration that is at variance with an express provision of the agreement establishing the place of arbitration.
The trial court has personal jurisdiction over all the parties. Each of them conducts business in New Jersey and each of the defendants was impleaded by Sparwick as a party in this civil action. The question before us, therefore, is not whether the trial court has the requisite interest in the subject matter and authority over the parties to order them to undertake or refrain from particular acts relating to the litigation, but whether in the circumstances, the discretion was exercised appropriately and in a way that did not violate a clear legal bar.
We begin with the well-established notion that a court has both the authority and responsibility to oversee the conduct of litigation so that the claims of the parties are adjudicated comprehensively and efficiently on the merits with due regard to their legal rights and equitable interests. See, e.g., Crescent Park Tenants Assoc. v. Realty Equities Corp., 58 N.J. 98, 107-08, 275 A.2d 433 (1971); Handelman v. Handelman, 17 N.J. 1, 11, 109 A.2d 797 (1954); In re Comm'r of Ins.'s Issuance of Orders, 274 N.J.Super. 385, 396, 644 A.2d 616 (App.Div.1993), aff'd, 137 N.J. 93, 644 A.2d 576 (1994); Borough of Rockaway v. Donofrio, 186 N.J.Super. 344, 352, 452 A.2d 694 (App.Div.1982); W.C. v. P.M., 155 N.J.Super. 555, 564, 383 A.2d 125 (App. Div.), certif. denied sub nom., W.A.C. v. New Jersey Div. of Youth & Family Servs., 75 N.J. 606, 384 A.2d 836 (1978).
*95 In Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co., 233 N.J.Super. 463, 559 A.2d 435 (App.Div.1989), we concluded that "the benefits [to any party] of fractionalizing... litigation ... into separate parts sharing a significantly duplicative overlay [did not] outweigh the private and public burdens which fractionalization inevitably imposes" and that "involuntary contraction and truncation of [the] litigation" was warranted. Id. at 470, 559 A.2d 435. There, to be sure, we were ruling in the context of a toxic tort scenario involving questions of insurance coverage arising in two suits against 144 insurers based upon some 3,000 individual claims which had been made against the plaintiff corporation in twenty-three states encompassing eighty-one sites, only nine of which were located in New Jersey. But it was not the complexity of the situation which created the rule we applied there; the intricacy of the circumstances bore only upon the appropriateness of the rule's application. With jurisdiction over the parties and an existing interest in the subject matter, we took the matter in hand and, eschewing forum non conveniens as a decisional principle, applied neutral principles of litigation management and efficiency.
James Stewart Polshek & Assocs. v. Bergen County Iron Works, 142 N.J.Super. 516, 362 A.2d 63 (Ch.Div.1976), a case on which Judge Conway relied, also involved three parties. One, the City of Englewood, had separate contracts with an architect and a contractor. Both contracts contained arbitration clauses. The architect and the contractor had no contractual relationship and, consequently, no obligation to arbitrate with each other. After the contractor filed a demand for arbitration against both the City and the architect, the City filed a crossclaim against the architect. The court regarded the crossclaim as "in effect a demand for arbitration," and ordered the respective arbitrable claims to be taken up in a single proceeding. Id. at 523-24, 362 A.2d 63. The non-arbitrable claims were excluded.
In this case there is an uncontroverted common thread of issues and facts arising out of a single project. Absent specific language prohibiting joint or consolidated arbitration, and where there is no showing of prejudice, consolidation is a practical, economical, convenient and preferred method of proceeding in the matters before the court. This is not doing indirectly what cannot be done directly since plaintiff has a contract with an agreement for arbitration with Englewood, and Englewood has a similar contract provision with Bergen Iron. Thus, Englewood can only seek an arbitration award against plaintiff. However, the matters can be heard contemporaneously, with witnesses and testimony that are common to other claims and witnesses who would obviously have to appear and testify in each. Nor is there any problem presented here concerning selection of arbitrators or inconsistent contractual provisions.
[Id. at 529, 362 A.2d 63.]
Here, Sparwick's agreement to arbitrate creates a factual parallel with Polshek. Disregarding LeFrak's potential involvement, we have three parties. One, Tomasco, has an arbitration right/obligation with regard to each of the other two in respect of a common subject matter. The other two have no direct contractual relationship and, therefore, there is no basis for imposing arbitration as between them. See Wasserstein v. Kovatch, 261 N.J.Super. 277, 284, 618 A.2d 886 (App. Div.), certif. denied, 133 N.J. 440, 627 A.2d 1145 (1993) ("[A] person cannot be compelled to arbitrate a dispute with another person unless there is mutual agreement to do so."). Manifestly, in any consolidated arbitration, Sparwick may only litigate its claims against Tomasco. Neither of the other parties, Walker and LeFrak, may be compelled to arbitrate the claims which Sparwick's complaint states against them. Thus, in the absence of a mutual agreement to expand the scope of the arbitration, once the consolidated arbitration is *96 concluded, if Sparwick has any further claim to make against Walker and LeFrak, it may do so only in this civil action.
The question remains as to the effect that must be given to the forum selection clause in the arbitration provision of the Walker-Tomasco contract. New Jersey recognizes the validity of forum selection clauses, but allows a court to decline to enforce such a provision in a particular instance if, inter alia, enforcement would seriously inconvenience trial. See Copelco Capital, Inc. v. Shapiro, 331 N.J.Super. 1, 4, 750 A.2d 773 (App.Div.2000); Caspi v. Microsoft Network L.L.C., 323 N.J.Super. 118, 122-24, 732 A.2d 528 (App.Div.), certif. denied, 162 N.J. 199, 743 A.2d 851 (1999); Wilfred MacDonald Inc. v. Cushman Inc., 256 N.J.Super. 58, 63-64, 606 A.2d 407 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992). By definition, this is a discretionary determination.
The record before us contains little or nothing concerning the relative inconveniences to the parties in arbitrating this matter in western Pennsylvania or in northern New Jersey. Walker merely insists on its contractual choice of forum; and Sparwick has conditioned its willingness to arbitrate on the proceeding being conducted in New Jersey. With no special reasons articulated by either to support its expressed preference, and knowing that all parties have a business presence in New Jersey, the court may take the parties' interests to be in equipoise on the question, and apply general principles of efficiency and common sense in resolving it.
This dispute, now tri-partite, arises from a common subject matter, the New Jersey project in which all three parties were involved. To the extent Sparwick's claim against Tomasco may be subject to defenses bearing upon the quality of the work done, Walker may have the very same defenses regarding the very same work in respect of Tomasco's claim against it. There is every reason why, in good sense, a single decision maker should have the benefit of the perspectives of each party involved in the work. And there is no good reason why any party, such as Tomasco, should be required to address the very same issues twice in separate proceedings. Moreover, since the project is located in Hudson County, it is quite likely that access to witnesses and other evidence will be easier to achieve in New Jersey.
Accordingly, we conclude that Judge Conway's discretionary ruling requiring the two arbitrations to be consolidated in New Jersey was a well-considered choice. We stress, however, that Sparwick's claims against Walker, as well as LeFrak, are not within the authority of the arbitrators to adjudicate unless the respective parties involved agree to submit those matters as well.
Affirmed.
NOTES
[1] On November 4, 1999, Tomasco had filed a construction lien claim against Walker in Hudson County. To discharge that lien, Walker filed a surety bond with the Hudson County Clerk on January 27, 2000.
[2] Tomasco had also agreed to participate in an arbitration of Sparwick's claim.
[3] On June 13, 2000, LeFrak moved for dismissal. Judge Conway declined to rule on the motion on jurisdictional grounds because of this pending appeal. See R. 2:9-1(a).
[4] In Article 12.1 of their contract, Walker and Tomasco agreed that LeFrak "may be joined in any such arbitration."
[5] This disposition has no bearing upon choice of law questions which may arise. As the matter was framed for consideration by the trial court, no such issues were presented.