## Harmar Twp. v. Deer Creek Drainage Basin Authority

*Edwin J. Martin,* for plaintiffs.

*David E. Johnson,* for defendant Deer Creek Drainage Basin Authority.

*John M. Means,* for Allegheny Valley Joint Sewage Authority.
*Walter F. Baczkowski,* pro se.
*Franklyn E. Conflenti,* pro se.
*Arthur J. Murphy, Jr.,* pro se.

FINKELHOR, *J.,* June 26, 1984—The above matter is before the court on application of Harmar Township, Springdale Borough, Cheswick Borough and Springdale Township to stay an arbitration proceeding between the Allegheny Valley Joint Sewage Authority (Allegheny Valley) and the Deer Creek Drainage Basin Authority (Deer Creek). The four municipalities, which make up the Allegheny Valley Authority, claim that their interests may be adversely affected by the outcome of said aribtration. Thus, the issue is whether a nonparty to an arbitration agreement may stay a pending arbitration proceeding on the grounds that the result may adversely affect the interests of the nonparty.[1]

## BACKGROUND

Allegheny Valley is a municipal authority, organized under the Municipalities Authorities Act of 1945, 53 P.S. §301 et seq., by the four municipal plaintiffs. In December 1962, plaintiffs entered into an agreement under which the municipalities would share the cost of operating the sewer system and sewage treatment facility. The 1962 agreement further provided that the municipalities would pay

---

1. A second question, not raised by the parties, is whether the four municipalities are indispensable or necessary parties to the arbitration. This issue is not being considered by the court.

the pro rata cost of operation, based on the actual amount of water consumed. Plaintiffs appoint the members of the Authority.

The agreement further authorized Allegheny Valley to contract with other customers and, subject to the approval of the creating municipalities, provide sanitary services to their customers on terms not materially more favorable than those rates provided to the four original municipalities.

In January 1976, Allegheny Valley entered into a contract with Deer Creek under which Deer Creek connected its sewer lines into Allegheny Valley's treatment facility.

Section 5.05 of this agreement provides as follows:

"In the event of any dispute between any of the parties hereto with respect to any matter arising out of this Agreement and not otherwise specifically herein provided for or being herein expressed to be at the sole discretion of any party of this Agreement, and not being settled within a reasonable time upon the recommendation of Allegheny Valley Authority's consulting engineer and Deer Creek Authority's consulting engineer, such dispute shall be settled by arbitration in accordance with the provisions of the Act of April 25, 1927, P.L. 381 of the Commonwealth of Pennsylvania, or any similar act in lieu thereof then in effect. In any such case three arbitrators shall be appointed, one of whom shall be appointed by Allegheny Valley Authority, one by the customers and the third shall be selected by the arbitrators so appointed. *The decision of the majority of the arbitrators appointed pursuant to the provisions of this Article V shall be binding and conclusive upon all parties to this agreement.*" (Emphasis added.)

Currently, a dispute has arisen regarding the meaning of certain terms in the agreement.[2] Deer Creek has requested that the term *operating expense* as it appears in section 1.01 of the agreement be reformed so that fewer of the expenses would be attributable to Deer Creek, with the possible result that the operting expenses of the remaining users of the system would increase. Upon failure of attempts to resolve this dispute amicably, Deer Creek, by letter dated May 10, 1983, notified the authority of the problem. Subsequently, a panel of arbitrators to hear the dispute was selected and the schedule of arbitration proceedings established. However, before the arbitration could proceed, plaintiffs filed the instant application for stay.

By order of court dated January 25, 1984, the arbitration proceeding was stayed pending a February 8 hearing. Following oral argument, this court permitted the various parties 30 days in which to file stipulations of fact and supporting briefs. The arbitration proceeding was stayed until June 1, 1984. Supporting briefs were filed by all parties.

## POSITION OF THE PARTIES

Plaintiffs seek to prevent arbitration between Allegheny Valley and Deer Creek on the grounds that their interests could be adversely affected by a decision of the arbitrators in favor of Deer Creek. They argue that the reformation of the agreement sought by Deer Creek would, if granted, reduce Deer Creek's costs for use of the system and that such charges would, of necessity, be passed along to them. The result would be to force Allegheny Valley

---

2. Definitions of terms within the 1976 agreement were taken from the 1962 agreement between the municipalities and Allegheny Valley.

into violating the 1962 agreement by providing services to Deer Creek on more favorable terms than those given the original subscribers — i.e., plaintiff municipalities. Allegheny Valley takes a position substantially similar to that of plaintiffs.

Conversely, Deer Creek seeks to enforce the arbitration clause of its Contract Customer Agreement and contends that the four municipalities lack standing to seek a stay of arbitration as they are not parties to the agreement. On the merits, Deer Creek argues that the effect, if any, of the adjudication on plaintiffs is irrelevant because their rights arise out of separate agreements. Additionally, Deer Creek raises defenses of estoppel and laches. Plaintiffs were invited to intervene in the arbitration proceedings to protect their interests but remain opposed to arbitration.

## DISCUSSION

The Uniform Arbitration Act, 42 Pa.C.S. §7301 et seq., provides as follows:

"A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract." 42 Pa.C.S. §7303

It is the public policy of the Commonwealth to give effect to arbitration agreements. Where the parties by contract contemplate the settlement of disputes by arbitration, every reasonable intendment should be made in favor of the agreement. Children's Hospital of Philadelphia v. American Arbitration Association, 231 Pa. Super. 230, 331 A.2d

848 (1974); Capecci v. Capecci, Inc., 11 D.&C.2d 459 (1958), aff'd 392 Pa. 32, 139 A.2d 563. Judicial inquiry into the arbitrability of a dispute is limited to a determination of whether or not the parties entered into an agreement and whether or not the dispute falls within the scope of that agreement. Scranton Federation of Teachers v. Scranton School District, 66 Pa. Commw. 466, 445 A.2d 260 (1982); Lincoln University v. Lincoln University Chapter, 467 Pa. 112, 354 A.2d 576 (1976). The court may, on application of a party, stay an arbitration on a showing that there is no agreement to arbitrate. 42 Pa.C.S. §7304(b)

It is well settled in Pennsylvania that a nonparty to an arbitration agreement cannot be forced to arbitrate, Cumberland & Perry Area Vocational Technical School Authority v. Bogar & Bink, 261 Pa. Super. 350, 396 A.2d 433 (1978), but counsel has not submitted any precedent on the right of a nonparty to stay arbitration proceedings.

The general rule among other Uniform Arbitration Act jurisdictions is that agreements to arbitrate will be enforced despite the existence of claims by third parties or of pending multi-party litigation. Iser Electric Co., Inc. v. Fossier Builders, Ltd., 84 Ill.App.3d 161, 39 Ill.Dec. 686, 405 N.E.2d 439 (1980). In Iser, the court held that, because the rights of the various parties arose from separate contracts, neither the arbitration decision nor the findings of the trial court would be binding on the other parties and that, because of the separate contracts, both inconsistency of result and duplicity of proof could be avoided. Cf. J. F. Inc. v. Vicik, 99 Ill.App.3d 815, 55 Ill.Dec. 282, 426 N.E.2d 257 (1981).

The same principle was applied in reverse in Cumberland & Perry Vocational Technical School

Authority v. Bogar & Bink, supra, where the Superior Court held that an entitly, not a party to the arbitration agreement could not avail itself of the contract.

The court stated:

". . . Since the Architect is not a party to Subcontract, the Architect may not avail itself of the arbitration clause contained therein. Even if we assume arguendo that Suburban is bound to arbitrate the roofing dispute with the Authority, the Architect's position vis-a-vis Suburban is not strengthened. Just as the Architect is not party to the Subcontract so is it not party to the General Contract, and the arbitration provision contained therein is not enforceable by the Architect against anyone. . . ." 396 A.2d at 435

Basically, in the instant case, the court is being asked to give to the four municipalities the same status as parties to the agreement. Our courts have ruled that a nonparty cannot be compelled to arbitrate under a contract that he never signed. By the same token, he lacks the ability to enjoin others from exercising rights for which they have contracted. To adopt the position of plaintiffs would open the door on every arbitration agreement to a host of intervenors.

In the instant proceedings, the claim of Deer Creek arises from the 1976 agreement with Allegheny Valley Authority. The status of plaintiffs stems from a 1962 agreement with the authority. Despite the relationship between the four plaintiff municipalities and Allegheny Valley, the authority is a separate and distinct entity. Actions of the authority do not bind the municipalities, nor can the municipalities assume the prerogatives of the authority. Com. v. Erie Metropolitan Transit Authority, 444 Pa. 345, 281 A.2d 345 (1971); Application of

548

Municipal Authority of Upper St. Clair Twp., 408 Pa. 464, 184 A.2d 695 (1962).

Plaintiffs stated concern that the planned arbitration could adversely affect its interests and increase the cost of operation of the water and sewage system and the share contributed by plaintiffs is premature. No ruling has been made by the arbitration panel. In the event such changes should occur, the courtroom door remains open to review rate structures. 53P.S.§306

The four municipalities and the sewer authority have no dispute, but only the possibility of a dispute, in the event that the arbitrators rule in favor of Deer Creek, and such ruling produces more favorable terms to Deer Creek than to the original subscribers in violation of the 1962 agreement between plaintiffs and the authority. Moreover, the interests of the municipalities appear to be shared by Allegheny Valley. Accordingly, there is no reason to believe that Deer Creek's claims will not be vigorously contested, even if plaintiffs decline the invitation to intervene. Conversely, to grant standing to a non-signatory to stay the proceedings rewrites the clear agreement of the contracting parties.

In short, the court concludes that the possibility that plaintiffs may be harmed by the outcome of the arbitration proceeding is an insufficient basis for a court to decline to enforce an otherwise valid, enforceable arbitration clause. All other arguments made by defendants are dismissed.

An appropriate order is attached hereto.

## ORDER OF COURT

And now, this June 26, 1984, upon the petition of plaintiff municipalities, Harmar Township, Springdale Borough, Cheswick Borough and

Springdale Township, to stay arbitration under the Contract Customer Agreement negotiated in January 1976 between Allegheny Valley Joint Sewage Authority and Deer Creek Drainage Basin Authority and it appearing to the court that plaintiffs are not parties to said contract customer agreement and have not suffered damage, it is hereby ordered, adjudged and decreed that said application to stay arbitration is denied.

It is further ordered that plaintiffs may intervene in said arbitration procedure.