2023 PA Super 116

| | | |
|---|---|---|
| JASON B. VON SICK AND SAPNA P. VON SICK H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANC BUILDERS, INC. AND MAIN STREET DEVELOPMENT COMPANY AND JUAN CARLOS CABRERA AND VALERI MUVDI AND CC PHILLY REAL ESTATE REALTY LLC D/B/A KELLER WILLIAMS REALTY D/B/A KELLER WILLIAMS PHILLY D/B/A KELLER WILLIAMS COMMERCIAL D/B/A THE MIKE MCCAN TEAM AND MIKE MCCANN D/B/A CC PHILLY REAL ESTATE REALTY LLC D/B/A KELLER WILLIAMS REALTY D/B/A KELLER WILLIAMS COMMERCIAL D/B/A THE MIKE MCCAN TEAM AND BEN HOOSON-JONES D/B/A CC PHILLY REAL ESTATE REALTY LLC D/B/A KELLER WILLIAMS REALTY D/B/A KELLER WILLIAMS COMMERCIAL D/B/A THE MIKE MCCAN TEAM AND NORTHWEST COMMERCIAL REALTY, INC.D/B/A ELFANT WISSAHICKON REALTORS F/D/B/A ELFANT WISSAHICKON AND KARRIE GAVIN D/B/A NORTHWEST COMMERCIAL REALTY, INC.D/B/A ELFANT WISSAHICKON REALTORS F/D/B/A ELFANT WISSAHICKON AND BPG INSPECTION, LLC D/B/A BPG INSPECTIONS | : : : : : : : : : : : : : : : : : : : : : : : : : | No. 391 EDA 2022 |
| | : | |
| | : | |
| APPEAL OF: BPG INSPECTION, LLC D/B/A BPG INSPECTIONS | : : | |

Appeal from the Order Entered January 19, 2022

J-S37019-22

In the Court of Common Pleas of Philadelphia County Civil Division at No(s): 210501570

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

OPINION BY LAZARUS, J.:                                      **FILED JUNE 28, 2023**

BPG Inspection, LLC, d/b/a BPG Inspections ("BPG"), appeals from the order, entered in the Court of Common Pleas of Philadelphia County, overruling its preliminary objection in the nature of an application to compel arbitration.[1] The trial court, the Honorable Jacqueline Allen, has requested that the case be remanded for the entry of an order referring the matter to arbitration. Upon careful review, we agree and remand accordingly.

Judge Allen set forth the underlying facts and procedural history of this matter as follows:

> Sometime between September 2020 and October 2020, [BPG] orally agreed to conduct a home inspection for [plaintiff Jason B. Von Sick] for a sum certain. The parties failed to produce any evidence of any discussion and/or agreement for any other additional terms.
>
> Thereafter, [BPG] presented [Von Sick] with a contract [("Agreement")], reducing the oral agreement to writing. The [A]greement included additional provisions, including but not limited to, a limitation of liability [provision] and an arbitration provision.
>
> The [A]greement specified that "This Agreement and the inspection report are for the sole benefit of the named Client. This

---

[1] Pennsylvania Rule of Appellate Procedure 311(a)(8) permits an interlocutory appeal as of right where the order is made appealable by statute. **See** Pa.R.A.P. 311(a)(8). Section 7320(a)(1) of the Uniform Arbitration Act provides that an appeal may be taken from an order denying an application to compel arbitration. **See** 42 Pa.C.S.A. § 7320(a)(1).

- 2 -

report is not intended to benefit any third party." The [A]greement further provided that, "This is NOT a contract of adhesion. If you desire a change to the language of this document you must contact our Client Relations Department no less than 24 hours before the start of your inspection to allow time for a review of your request." The contact information for the Client Relations Department was provided in the Agreement.

Despite the above language, [Von Sick] declared that, "It was my understanding that BPG would not provide the services of an inspection unless and until I acquiesced to the Agreement and all of its terms." [Von Sick] signed the [Agreement] on October 9, 2020[.]

Brian Eisenman[, BPG's corporate designee,] testified [at deposition] that he possessed both knowledge and familiarity with the [A]greement and the provisions contained therein. [] Mr. Eisenman . . . testified that there were no changes to the terms of the written agreement. No evidence was presented as to whether a request to alter the [A]greement was made and/or denied.

. . .

On October 11, 2021, [BPG] filed preliminary objections to the plaintiffs' third amended complaint. [BPG] sought to enforce [the arbitration clause of the] Agreement. Additionally, [Von Sick] ask[ed] the court to find the [A]greement void as one of adhesion.

On November 8, 2021, the Honorable Daniel Anders issued a rule to show cause why the "preliminary objections should not be granted as to the issue of the agreement for alternative dispute resolution." The [o]rder further provided that the court "will accept affidavits, deposition testimony, and documentary evidence relevant to the issue of the agreement for alternative dispute resolution." In response to the [o]rder, the [p]laintiffs produced an affidavit from [Von Sick] dated November 29, 2021. [] Eisenman[] was presented for deposition on December 12, 2021.

On January 5, 2022, the preliminary objections were reassigned to this court for disposition. On January 14, 2022, [plaintiffs'] preliminary objection[ as to the arbitration clause was] overruled.

Trial Court Opinion, 6/28/22, at 1-3 (reordered for clarity; citations to record omitted).

On January 24, 2022, BPG filed a timely notice of appeal. The trial court did not order BPG to file a Rule 1925(b) concise statement of errors complained of on appeal. On June 28, 2022, the trial court issued an opinion in which it requested that we remand the case for the entry of an amended order sustaining BPG's preliminary objection in the nature of an application to compel arbitration. BPG raises the following claim for our review:

> Whether the trial court's order overruling [BPG's] preliminary objection for arbitration should be reversed and [Von Sick's] breach of contract claim against BPG removed to arbitration pursuant to the parties' valid agreement?

Brief of Appellant, at 3 (unnecessary capitalization omitted).

> Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration is clear. Our review is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.
>
> In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.
>
> Whether a claim is within the scope of an arbitration provision is a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary.

***Fineman, Krekstein & Harris, P.C. v. Perr***, 278 A.3d 385, 389 (Pa. Super. 2022) (citation omitted).

Further, we are guided by the following principles:

(1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

***Smay v. E.R. Stuebner, Inc.***, 864 A.2d 1266, 1273 (Pa. Super. 2004).

Here, the Agreement between Von Sick and BPG contained an arbitration clause, providing in relevant part:

DISPUTE RESOLUTION/MANDATORY ARBITRATION
This provision constitutes an agreement to arbitrate disputes on an individual basis. Any party may bring an individual action in small claims court instead of pursuing arbitration.

Any claim, dispute[,] or controversy, regarding any contract, tort statute, or otherwise ("Claim"), arising out of or relating to this Agreement, any service provided pursuant to this [A]greement, its issuance, a breach of any agreement provision, any controversy or claim arising out of the transaction giving rise to this Agreement, or the relationships among the parties hereto[,] shall be resolved by one arbitrator through binding arbitration administered by the American Arbitration Association ("AAA"), under the AAA Commercial or Consumer, as applicable, Rules in effect at the time the Claim is filed ("AAA Rules").

Home Inspection Agreement, 10/9/20, at 2.

The parties do not dispute that Von Sick's claim is within the scope of the agreement to arbitrate. Rather, Von Sick posits two arguments against arbitrability in this matter. First, Von Sick asserts that the arbitration provision is not applicable because there are multiple defendants not subject to the agreement whose crossclaims against BPG will be tried in court. Von Sick asserts that arbitrating BPG's claims, while litigating the other defendants' crossclaims against BPG in court, will result in "piecemeal,

repetitive litigation in violation of Pennsylvania law." Brief of Appellee, at 17. In light of our Supreme Court's decision in *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490 (Pa. 2016), this argument is meritless.

"Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (FAA)." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. 2013). This policy applies to all arbitration agreements. *MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1219 (Pa. Super. 2015) (en banc).

> Section 2 of the FAA binds state courts to compel arbitration of claims subject to an arbitration agreement. 9 U.S.C. § 2 (providing that arbitration agreements "shall be valid, irrevocable, and enforceable"). This directive is mandatory, requiring parties to proceed to arbitration on issues subject to a valid arbitration agreement, even if a state law would otherwise exclude it from arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58[] (1995).

> The only exception to a state's obligation to enforce an arbitration agreement is provided by the [FAA's] savings clause, which permits the application of generally applicable state contract law defenses such as fraud, duress, or unconscionability, to determine whether a valid contract exists.

*Taylor*, 147 A.3d at 509.

> Moreover,

> [T]he prospect of inefficient, piecemeal litigation proceeding in separate forums is no impediment to the arbitration of arbitrable claims. Indeed, where a plaintiff has multiple disputes with separate defendants arising from the same incident, and only one of those claims is subject to an arbitration agreement, the [United States Supreme] Court requires, as a matter of law, adjudication in separate forums.

*Id.* at 507.

Von Sick cites several pre-*Taylor* cases to support his assertion that the existence of multiple parties with crossclaims not subject to the arbitration agreement militates in favor of rejecting BPG's efforts to compel arbitration. However, as our Supreme Court made abundantly clear in *Taylor*, the prospect of piecemeal, possibly duplicative litigation is no longer an impediment to arbitrability where a valid agreement exists.

Von Sick also argues that the Agreement is a contract of adhesion with unconscionable terms unreasonably favoring BPG. *See* Brief of Appellee, at 14-15. Von Sick asserts that, as a consumer in a weaker position than BPG, he "was obligated to sign the contract with its terms, despite having little or no choice about the terms of the contract with BPG." *Id.* at 31. Von Sick contends that, had he not signed the Agreement, "BPG would not [have] inspect[ed] the home that he was under contract to purchase." *Id.* at 33. Accordingly, the contract is one of adhesion, requiring him "only . . . to show that the terms of the contract 'unreasonably favor[]' BPG." *Id.* He argues that two specific provisions of the contract meet that standard: (1) a clause requiring him to notify BPG of any defect for which it may be liable within 14 days of discovery; and (2) a clause limiting BPG's liability to the lesser of actual damages or the inspection fee.

BPG asserts that "it is highly unpersuasive for [Von Sick] to argue for the invalidity of the contract, patently containing the agreement to arbitrate, while seeking damages for breach of that very alleged unenforceable

contract." Brief of Appellant, at 11. BPG argues that the contract is not one of adhesion and, in fact, the document included language providing Von Sick the opportunity to request changes in the language of the contract by contacting BPG's customer relations department, which Von Sick did not do. *See* Home Inspection Agreement, 10/9/20, at 4 (stating, "This is NOT a contract of adhesion. If you desire a change to the language of this document you must contact our Client Relations Department no less than 24 hours before the start of your inspection to allow time for a review of your request."). BPG further asserts that the arbitration provision is not unconscionable, as it applies equally to both parties. BPG argues that there is no record basis for Von Sick's claim that BPG "would not [have] inspect[ed] the property unless and until he acquiesced to the terms of the inspection contract" and, in fact, the inspection occurred the day **before** Von Sick signed the Agreement. *Id.* at 20-21. Finally, BPG argues that, even if the two clauses Von Sick cites are unconscionable, such a finding "would not legally operate to invalidate the entire agreement, or the arbitration clause in particular, under the caselaw," *id.* at 22, and, moreover, the Agreement contains a severability clause.

As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Unless the challenge is to the arbitration clause itself, the issue of the contract's validity is

considered by the arbitrator in the first instance.[2]  *Id.* at 445-46.  Thus, "[t]he courts may consider, in the first instance, only those challenges that are directed solely to the arbitration component itself."  *Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 120 (Pa. 2007).

The doctrine of unconscionability has been applied in Pennsylvania as both a statutory and a common-law defense to the enforcement of an

---

[2] We note this Court's decision in *Carll v. Terminix Int'l Co., L.P.*, 793 A.2d 921 (Pa. Super. 2002), in which we addressed a similar, but distinguishable, factual scenario.  There, appellants petitioned the trial court to compel arbitration after appellees brought suit claiming they, and their minor children, had sustained "numerous severe and permanent injuries" as a result of appellants' negligent application of pesticides in and around their home.  *Id.* at 922.  The parties' contract contained an arbitration provision requiring that "all matters in dispute between [the parties] . . . whether by virtue of contract, tort[,] or otherwise, shall be settled exclusively by arbitration."  *Id.* at 923. The arbitration clause further provided that "the arbitrator shall give effect to any and all waivers, releases, disclaimers, limitations, and other terms and conditions" of the contract.  *Id.*  Finally, the contract contained a limitation of liability provision stating that, "notwithstanding any claim of negligence [on the part of] Terminix, [Terminix's] sole responsibility is to 're-treat' the property."  *Id.* at 923-24.   The trial court denied the motion to arbitrate on the basis that the agreement was unconscionable and against public policy, "given the circumstances of this case[,] where ultrahazardous pesticides have been applied in a residential setting[.]"  *Id.* at 924.

On appeal, Terminix contended that the arbitration provision was severable from the limitation of damages provision and, thus, the court should have enforced the arbitration provision and allowed the arbitrator to determine whether the limitation of liability provision was unconscionable as against public policy.  This Court rejected that argument on the basis that the arbitration provision was not independent of the limitation of damages provision and "not only provides for arbitration but at the same time limits the arbitrator's authority."  *Id.* at 926.  Here, unlike in *Carll*, the limitation of liability provision is independent of the arbitration provision.  *See* Home Inspection Agreement, 10/9/20, at 2.  Thus, it is within the power of the arbitrator to determine whether other provisions of the agreement are, in fact, unconscionable.

allegedly unfair contract or contractual provision. ***Id.*** at 119, citing 13 Pa.C.S.A. § 2302 (establishing the doctrine's applicability pertaining to contracts involving goods and services within the purview of the Pennsylvania Commercial Code). A contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. ***Id.*** The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts. ***Id.*** at 119-20, citing ***Bishop v. Washington***, 480 A.2d 1088, 1094 (Pa. Super. 1984)

Here, Von Sick submitted no evidence in the trial court establishing that the arbitration clause, itself, unreasonably favored BPG. Rather, he based his unconscionability argument on other, unrelated clauses of the contract. ***See*** Plaintiffs' Supplemental Memorandum of Law in Support of Response to Preliminary Objections, 1/3/22, at 12-14 (arguing clauses imposing limitation on damages and 14-day time limit to notify BPG of defect unreasonably favor BPG). However, as noted above, where the arbitration provision itself is valid, any determination as to the validity of the remainder of the contract is for the arbitrator to make. ***Buckeye Check Cashing, Inc.***, ***supra***. Because Von Sick did not sustain his burden to prove the unconscionability of the arbitration clause, ***Salley***, ***supra***, the trial court erred in overruling BPG's preliminary objection in the form of an application to compel arbitration.

Order vacated.  Case remanded for entry of order consistent with the dictates of this decision.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2023